# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 31, 2013

No. 12-40543
Summary Calendar

Lyle W. Cayce
Clerk

DARRON MORGAN,

Plaintiff-Appellant

v.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE MCCONNELL UNIT;
MAXIMILLIANO HERRERA; REFUGIA CAMPOS; "JOHN DOE" WOLF;
WILLIAM BURGIN,

Defendants-Appellees

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 2:11-CV-124

Before JONES, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Darron Morgan, proceeding pro se, appeals the denial of his complaint against various prison officials and physicians for their alleged deliberate indifference to his medical needs in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. Morgan challenges the grant of summary judgment in favor of defendants Dr. Herrera and William Burgin and

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

the dismissal of his claim against another physician, Dr. Wolf, pursuant to Rule 12(b)(6). He also challenges the denial of his motions for the appointment of counsel and to compel discovery, and moves for leave to amend a supplemental brief. We GRANT leave to file the supplemental brief and AFFIRM the judgment below in part and DISMISS the appeal in part.

## I.

## A.

Darron Morgan, Texas prisoner # 640157, brought the present civil action against the Texas Department of Criminal Justice McConnell Unit, Dr. Herrera, Nurse Campos, Dr. Wolfe, and William Burgin, pursuant to 42 U.S.C. § 1983 and the Prison Litigation Reform Act (PLRA), *id.* § 1997e *et seq.* While Morgan was imprisoned at the McConnell Unit, he complained of congestion, nasal drip, and a runny nose to prison officials in April of 2009. He was diagnosed as suffering from asthma and allergy symptoms. Campos examined Morgan and prescribed the antihistamine chlorphen. While taking the chlorphen, Morgan alleges that his nose began bleeding and developed sores. When Morgan complained about the problem, Dr. Wolfe saw him, and she prescribed a double antibiotic cream to apply to the sores in his nose. While Dr. Wolfe prescribed the antibiotic cream, Dr. Herrera's name was on the medication pass authorizing Morgan to obtain it.

The double antibiotic cream healed the sores in Morgan's nose, but Morgan alleges that he began experiencing adverse side effects, including losing his hearing, balance, and sense of smell. Morgan also alleges that he suffered from ulcers in his mouth and throat, and a rash that developed on his face. The defendants dispute that those symptoms were side-effects of their treatment and, in support, offer the expert testimony of a physician who opined that those symptoms arose from Morgan's underlying conditions that the medicines were intended to treat. Morgan states that unidentified medical personnel at

McConnell prescribed triamcinolone cream and an antibiotic for the rash, but his symptoms did not improve. Dr. Wolfe also prescribed Kenalog injections over a six-month period. According to Morgan, he made a sick call request to Dr. Herrera after returning from the hospital. When Dr. Herrera examined Morgan, Dr. Herrera allegedly told him that he had damage to his alimentary canal that was not treatable. Due to the damage to the alimentary canal, Morgan says he was not able to produce mucous, causing Morgan considerable pain. The defendants offered evidence that Morgan was suffering from those symptoms before he was treated by prison physicians and asserted that Morgan's allegations as to damage to his alimentary canal had no basis in fact.

Morgan complained of red spots and sores between January 2011 and April 2011. During the relevant time period, McConnell was on semi-lockdown, and he missed multiple medical appointments during this time period because a security escort was not available. Due to this problem, Burgin referred Morgan and all other administrative segregation inmates with medical problems to be seen by medical staff at their cells. Morgan alleges that Burgin, the medical grievances manager, did not schedule the appointments, an allegation that the defendants also dispute. Morgan was seen in his cell for his skin condition by a nurse on February 3, 2011, based upon Burgin's referral, and the nurse referred Morgan to a mid-level practitioner. Morgan was ultimately seen by a physician's assistant in April of 2011, diagnosed with having lice and a rash, and prescribed medication. Burgin was the practice manager at McConnell who was responsible for responding to inmate grievances regarding medical care. Burgin was not licensed to practice medicine and had no medical training. This evidence was uncontradicted by Morgan in the summary judgment record.

The record reflects that Morgan filed a number of grievances with Burgin complaining of the foregoing ailments and the alleged insufficiency of his medical treatment.

**B.**

Morgan filed the present § 1983 suit alleging the violation of his Eighth Amendment right to be free from cruel and unusual punishment. The case was initially referred to a Magistrate Judge (MJ), who recommended that Morgan's claims against McConnell and Morgan's official-capacity claims against the defendants be dismissed based upon sovereign and Eleventh Amendment immunity. She further recommended that Morgan's claims against Campos and Dr. Wolfe be dismissed for failure to state a claim upon which relief may be granted. The district court adopted the MJ's report and recommendation and dismissed Morgan's claims against McConnell, Morgan's official capacity claims against the defendants, and Morgan's claims against Campos and Dr. Wolfe. Morgan filed two motions for appointment of counsel and various motions to compel discovery. The MJ denied all of the motions.

Dr. Herrera and Burgin then moved for summary judgment, arguing that Morgan had failed to exhaust his administrative remedies because the four prison grievances he had filed relating to his medical conditions did not mention Dr. Herrera or Burgin and did not detail his claims against them. The prison records they filed in support of this claim, however, indicated that Morgan had filed a fifth prison grievance that had been misplaced by prison authorities. Dr. Herrera and Burgin also sought summary judgment on the basis of qualified immunity and on the merits of Morgan's claims.

The MJ recommended that Dr. Herrera and Burgin be granted summary judgment because Morgan had not exhausted his administrative remedies and because they were entitled to qualified immunity. Morgan filed a timely objection challenging the MJ's recommendation and the MJ's denial of his motions for appointment of counsel. The district court overruled Morgan's objections, adopted the report and recommendation of the MJ, and granted summary judgment in favor of Dr. Herrera and Burgin. Morgan filed a timely notice of appeal.

## II.

The district court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction to review the final orders of the district court. *Id.* § 1291. Morgan timely filed objections and a notice of appeal from the district court's orders granting the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). However, Morgan did not object to or seek district court review of the MJ's orders denying his motions to compel discovery. We therefore lack jurisdiction to consider Morgan's argument that the MJ erred by denying his motions to compel. *See Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1137 (5th Cir. 1987) (holding that this court did not have jurisdiction to consider challenge to a magistrate judge's discovery ruling because party did not seek review in the district court); *see also* Fed. R. Civ. P. 72(a). Accordingly, that portion of Morgan's appeal is dismissed. *See United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980). We have jurisdiction over the remaining claims on appeal.

## III.

On appeal, Morgan challenges only the dismissal of his Eighth Amendment deliberate indifference claims against Dr. Wolfe under Rule 12(b)(6) and against Dr. Herrera and Burgin under Rule 56. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court recognized that the Eighth Amendment requires the government to provide medical care to inmates because the failure to do so "may actually produce physical 'torture or a lingering death'" or unnecessary "pain and suffering." *Id.* at 103 (citation omitted). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

To prevail on such a claim, a § 1983 "claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate;

it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (citations omitted); *see also, e.g.*, *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004) (same); *Brown v. Bolin*, 500 F. App'x 309, 318-19 & n.5 (5th Cir. 2012) (unpublished) (Dennis, J., concurring in part and dissenting in part) (same) (collecting cases), *cert. denied*, No. 12-1257, 2013 WL 1703411 (June 17, 2013). A trier of fact may infer that a § 1983 defendant had knowledge of the risk if the risk was obvious, for instance, if the evidence shows that a doctor or other prison official "knows that some diseases are communicable and that a single needle is being used to administer flu shots to prisoners but refuses to listen to a subordinate who he strongly suspects will attempt to explain the associated risk of transmitting disease[.]" *Farmer*, 511 U.S. at 843-44 & n.8.

"[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (collecting cases); *see also, e.g.*, *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."). Thus, a defendant must show that "the claimed independent acts of negligence by each physician were . . . sufficient to raise a material fact issue that each doctor knew that his acts or omissions subjected [the defendant] to an excessive risk of harm, yet responded to the risk with deliberate indifference." *Stewart*, 174 F.3d at 537.

## A.

First, Morgan challenges the dismissal of his claims against Dr. Wolfe for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C.

§§ 1915(e)(2)(B) and 1915A(b)(1), a ruling we review *de novo*, *see Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998).

Morgan did not allege that Dr. Wolfe refused to treat him or delayed treating him. Instead, he alleged that Dr. Wolfe provided incorrect or negligent treatment by prescribing ongoing Kenalog injections despite their alleged side effects and by directing him to use double antibiotic cream on internal nose sores when the cream had allegedly only been approved for external use. While prescribing incorrect treatments or treatments that cause serious side effects might amount to malpractice,[1] this allegation, without a further showing of deliberate indifference to serious medical needs, does not rise to the level of a constitutional violation. A prison physician's negligence or malpractice cases does not typically rise to the level of cruel and unusual punishment within the meaning of the Eighth Amendment. *See, e.g.*, *Stewart*, 174 F.3d at 534; *see also Farmer*, 511 U.S. at 835. The allegations that the FDA did not approve the alleged off-label use of this antibiotic cream or that Dr. Wolfe violated professional standards of care in administering either treatment are not enough to give rise to a constitutional violation absent allegations of deliberate indifference to Morgan's medical needs. Morgan does not allege or point to circumstances that would suggest that Dr. Wolfe prescribed the antibiotic cream with knowledge that the cream would pose "a substantial risk of serious harm," or that such a risk would have been obvious, and that Dr. Wolfe "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *see id.* at 843-44 & n.8. We therefore affirm the dismissal of Morgan's claims against Dr. Wolfe.

---

[1] The defendants offered the expert testimony of a physician who opined that the defendants did not violate the standard of care in their treatment of Morgan's various symptoms.

**B.**

Morgan next argues that the district court erred by granting summary judgment to Dr. Herrera and Burgin. We review de novo a district court's grant of summary judgment under the usual standard. *Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754 (5th Cir. 2011). Summary judgment is proper when the pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, demonstrate that no genuine issue exists as to any material fact and that the movant is entitled to judgment or partial judgment as a matter of law. Fed. R. Civ. P. 56(a).

**1.**

As an initial matter, Dr. Herrera and Burgin argue that Morgan's claim was untimely exhausted. Morgan responds that he exhausted his administrative remedies and that he raised claims against Burgin in the prison grievance that was misplaced by prison officials. Congress enacted the PLRA "[i]n an effort to address the large number of prisoner complaints filed in federal court . . . . Among other reforms, the PLRA mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit." *Jones v. Bock*, 549 U.S. 199, 202 (2007) (citing 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(a)). The requirement that plaintiffs exhaust their administrative remedies under the PLRA is an affirmative defense. *Id.* at 216. As such, the burden is on the defendants to prove that a plaintiff failed to exhaust his administrative remedies. *See Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

The summary judgment evidence presented by Dr. Herrera and Burgin reflects that Morgan had filed a prison grievance during the relevant time period that prison officials could not locate or produce. Morgan alleges that he exhausted his administrative remedies regarding some of his claims in that grievance. As Dr. Herrera and Burgin did not show "beyond peradventure all

of the essential elements of the defense of exhaustion," they were not entitled to summary judgment on exhaustion grounds. *Id.* However, "we may affirm a grant of summary judgment on any ground supported by the record, even if it is different from that relied upon by the district court." *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 193 (5th Cir. 2013). We therefore turn to the merits of the defendants' motion for summary judgment.

## 2.

Dr. Herrera and Burgin assert that they are entitled to qualified immunity as to Morgan's deliberate indifference claim. "The doctrine of qualified immunity protects government officials from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rockwell v. Brown*, 664 F.3d 985, 990-91 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2433 (2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted)). When, as here, the defendants have asserted qualified immunity in a summary judgment motion, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Therefore, the qualified-immunity inquiry has two prongs: (1) whether an official's conduct violated a constitutional right of the plaintiff, and (2) whether that right was clearly established at the time of the violation. A court may rely on either prong of the defense in its analysis." *Rockwell*, 664 F.3d at 990-91 (citations and quotation marks omitted).

Morgan claims that Dr. Herrera prescribed or approved the prescription of double antibiotic cream for internal use, and that Dr. Herrera told Morgan that his alimentary canal was damaged and that nothing could be done about it. For the reasons set forth above, Morgan has failed to allege a constitutional violation arising from his physicians' instructions that he use the cream, much

less that Dr. Herrera, whose name only appeared on the prescription form as the prescribing doctor, was aware of any serious risk to Morgan's health or safety that would be posed by such off-label use of the medicine. Likewise, the summary judgment record did not reflect that Dr. Herrera ever examined Morgan or that he had any reason to believe that his alimentary canal had been damaged. Accordingly, Morgan has not demonstrated that Dr. Herrera violated his clearly established constitutional right against deliberate indifference in his medical care. We therefore affirm the grant of summary judgment in Dr. Herrera's favor on grounds of qualified immunity.

With respect to Morgan's claim against Burgin, Morgan offered evidence that he complained to Burgin about red spots or sores all over his body but did not receive treatment until months later. He contends that Burgin could have ensured that he received treatment because Burgin sent a nurse to see him in his cell, and the nurse did not provide treatment, and that Morgan did not receive treatment on site at the clinic due to a lack of security personnel to transport him to prison medical facilities. However, the summary judgment record reflects that Burgin responded to Morgan's grievances and arranged for Morgan to see a Dr. Stein on the premises.[2]

A defendant may not be held liable under § 1983 pursuant to a theory of respondeat superior, but may be held liable for his or her role in a constitutional violation premised on the defendant's individual conduct as a supervisor, for example, his or her failure to train. *See Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 286-87 (5th Cir. 2002). Here, however, Morgan did not provide evidence or allege that Burgin personally participated in his medical treatment, that Burgin had the ability or responsibility to provide him medical treatment, or that Burgin had any control or authority over security

---

[2] The record also evinces that, ultimately, Morgan was prescribed Calamine lotion, Hytone (a hydrocortisone cream), and Benadryl for his rash, and that the symptoms were resolved.

personnel that would have allowed Burgin to provide the proper escort to take Morgan to medical appointments.[3] Burgin stated in his affidavit that he was not a clinician, did not have a license to practice medicine, and had no medical training; and that his job involved responding to grievances about the medical care of the inmates. This evidence is uncontradicted in the record. The record also reflects that Morgan was under the ongoing care of the McConnell medical staff and that he was seen dozens of times for the symptoms of which he complained. As Morgan did not produce evidence showing that Burgin was responsible for any delay in treatment that may have occurred, and that Burgin did in fact refer Morgan to be seen by medical staff, the summary judgment record reflects that Burgin did not violate Morgan's clearly established constitutional rights. Accordingly, Burgin was entitled to qualified immunity.[4]

AFFIRMED; APPEAL DISMISSED IN PART; MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF GRANTED.

---

[3] Morgan also makes a number of new factual allegations on appeal, such as that he never received proper treatment for his conditions until he filed the present lawsuit in 2011 and that the prison pharmacy interfered with his treatment by denying him medications. In general, we do not consider new evidence that was not presented to the district court or new claims that were not raised in the district court. *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir. 1999); *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.*, 200 F.3d 307, 316-17 (5th Cir. 2000). Because Morgan did not raise these claims in the district court, we do not consider those claims. *See Stewart Glass & Mirror, Inc.*, 200 F.3d at 316-17.

[4] Finally, Morgan challenges the district court's denial of his motion for counsel. *See Cupit v. Jones*, 835 F.2d 82, 86 (5th Cir. 1987) (providing that a party in a civil rights action must show extraordinary circumstances to be entitled to appointed counsel). In light of our disposition of the merits of Morgan's claims, Morgan has not shown that the district court committed a clear abuse of discretion by denying his requests for appointment of counsel. *See id.*