# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 20, 2015

Lyle W. Cayce
Clerk

No. 14-30069

JORDAN DARRELL ZANTIZ,

> Plaintiff - Appellee

v.

RONNIE SEAL, Captain; WADE RIGDON, Lieutenant; BRUCE FORBES, Sergeant - EMT; LESTER MITCHELL, Captain; HEATHER WARNER, Sergeant; RHONDA DISTEFANO, Sergeant Master; CRAIG KENNEDY, Major; FRANK CLELAND, Captain Food Service/Security; CARLA TULLOS, Sergeant Master,

> Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-1580

Before JOLLY, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:*

Pro se appellee Jordan Darrell Zantiz ("Zantiz"), previously an inmate at Louisiana's Rayburn Correctional Center ("Rayburn"), sued appellants, nine Rayburn employees (collectively, "appellants"), under state law and 42 U.S.C.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30069

§ 1983 for use of excessive force, failure to protect, and deficient provision of medical care. This interlocutory appeal involves the appellants' federal qualified immunity defenses. Five appellants appeal the denial of their qualified immunity defenses, one at the motion to dismiss stage and the others at the summary judgment stage. All nine appellants appeal the discovery order issued below. We AFFIRM the orders denying the motion to dismiss and the motion for summary judgment, but we VACATE the discovery order as to five of the appellants.

### FACTUAL AND PROCEDURAL BACKGROUND

Zantiz's pro se, verified complaint alleges the following. On December 31, 2011, appellant Sergeant Rhonda Distefano ("Distefano") escorted Zantiz to the dining hall to speak to appellant Captain Lester Mitchell ("Mitchell") about a previous incident. At the conclusion of this discussion, Mitchell told Zantiz that he was going to be "lock[ed] up pending investigation." Zantiz responded, "That's cool." Appellant Captain Ronnie Seal ("Seal") handcuffed Zantiz with his hands behind his back, "and then punched [Zantiz] on [his] left ear and twisted the cuffs and grabbed [his] shirt collar." Zantiz asked Mitchell why Seal was punching him, and Mitchell responded, "Oh well." Seal then "began pushing [Zantiz] out of the dining hall, yelling racial things in [his] ear."

When Zantiz and Seal reached "'A' walk," Seal punched Zantiz again and ordered appellant Sergeant Master Carla Tullos ("Tullos") to open the gate. As Zantiz and Seal walked "down the sidewalk in between 'B' building and the 'ED' building, Lt. Seal jerked [Zantiz's] collar and started yelling in [his] ear about how he hates smart-ass niggers."[1] Then, "[a]t the end of the sidewalk just before [they] hit the asphalt, Lt. Seal forced [Zantiz] to the ground and

---

[1] The appellant's brief informs us that Lieutenant Seal has since been promoted to the rank of captain.

2

began kneeing [him] in the back, and side areas (left) repeatedly." Shortly thereafter, Zantiz's "legs were crossed and someone began stomping on [his] back, butt and leg." When Zantiz looked back, he saw appellant Lieutenant Wade Rigdon ("Rigdon") "twisting/pulling [his] feet cross [sic] each other." Seal "continued kicking and stomping" Zantiz. Seal "then began lifting [Zantiz's] arms up and kneed [him] in the back once again. [Seal] put his arm around [Zantiz's] neck choking [him,] yelling in [his] ear" various racist threats. When Zantiz looked up, he saw that Tullos and appellant Sergeant Heather Warner ("Warner") had witnessed the incident.

Later, once Zantiz was "secured in sleet unit confinement," Seal brought appellant Emergency Medical Technician ("EMT") Sergeant Bruce Forbes ("Forbes") to see Zantiz. Forbes "noticed that [Zantiz's] left ear was bleeding and joked about [him] still having a [sic] ear." Zantiz "showed [Forbes] the rest of [his] injuries and hurting spots. EMT Forbes pressed on a area on [his] left side and informed Lt. Seal that [he had] a fractured rib, but told [Seal] that [Zantiz] would live." Forbes "told Lt. Seal that [Zantiz's] wrist, ankles, back and everything else would heal up in a few weeks." Zantiz "told [Forbes] that [he] want[ed] to see the doctor. He replied, 'No you don't,[ ] your black ass shouldn't have pissed Lt. Seal off.'" Zantiz complained that he had just been beaten by Seal, and Seal and Forbes laughed and told Zantiz "to lay down for a couple of days." Zantiz "asked EMT Forbes if he was deliberately denying [him] medical treatment. He replied, 'yeah,[ ] what can you do about it' and walked away with Lt. Seal."

The magistrate judge assigned to the case held a *Spears* hearing. That testimony is "incorporated into [Zantiz's] pleadings." *Eason v. Holt*, 73 F.3d

No. 14-30069

600, 602–03 (5th Cir. 1996).[2] At the *Spears* hearing, Zantiz testified under oath. His *Spears* testimony was broadly consistent with his complaint, although he added a few more facts. For example, he estimated that the entire altercation may have lasted about 15 minutes. He also testified that, as of September 4, 2012, he still had "a big old knot" in his poked eye, he had been "having back problems ever since the incident," his ear still "pusse[d] from time to time," and he still had neck and tailbone pain, although his ribs had stopped hurting around April of 2012. He testified that, during the three shifts after the alleged beating, he told staff that he was having trouble breathing, but they declined to provide treatment, telling him he had already been treated by Forbes. Zantiz testified that he had not sought medical treatment after that, however, "because Medical had a chance to correct the situation and they have not done anything to correct the situation at all."

Zantiz also provided testimony about the named defendants he had not discussed in his original complaint. He testified that Distefano and appellant Major Craig Kennedy ("Kennedy") were present in the dining hall when Seal first hit Zantiz in the side of the head, but they did nothing. He also testified that appellant Captain Fred Cleland ("Cleland") "threatened to bust me up when I walked up in there because he said I needed to mind my own business."[3]

---

[2] A *Spears* hearing helps determine whether a prisoner's in forma pauperis lawsuit should be dismissed as frivolous under 28 U.S.C. § 1915. *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *abrogated in part on other grounds by Neitzke v. Williams*, 490 U.S. 319, 328 (1989). The *Spears* hearing is conceptualized as a motion for more definite statement under Federal Rule of Civil Procedure 12(e). *Id.* at 181–82. Accordingly, *Spears* hearing testimony is "incorporated into the pleadings." *Eason*, 73 F.3d at 602–03.

[3] From the *Spears* testimony and the complaint, it is not entirely clear whether Cleland was present during the dining hall incident or the later incident. But, because Zantiz's testimony about Cleland was immediately after testimony about other people present in the dining hall, it is reasonable to assume that Cleland witnessed the dining hall incident. The district court also reached this conclusion.

No. 14-30069

Based on Zantiz's complaint and *Spears* testimony, the magistrate judge determined that Zantiz was suing Seal and Rigdon for use of excessive force, Forbes for inadequate provision of medical care, and Mitchell, Tullos, Warner, Distefano, Kennedy, and Cleland for failure to protect.[4]    The district court agreed with the magistrate judge's breakdown of the legal theories alleged against each appellant.

Forbes filed a motion to dismiss based on his qualified immunity defense, arguing that he had not violated the Constitution.  He argued that Zantiz had not had a serious medical need, and therefore Forbes could not be liable for deliberate indifference to a serious medical need.  Forbes acknowledged that the alleged injuries, taken alone, would have been a serious medical need, but he argued that Zantiz must have been lying about the extent of the injuries because he never requested any additional medical treatment.  The district court denied Forbes's motion to dismiss, rejecting his argument that Zantiz failed to seek additional treatment because his *Spears* testimony indicated that he asked for medical treatment during the three shifts after the alleged beating.

Mitchell, Cleland, Kennedy, and Distefano (collectively, the "summary judgment defendants") filed a motion for summary judgment based on qualified immunity, arguing that they had not violated the Constitution.  The summary judgment defendants were the Rayburn staff who allegedly failed to protect Zantiz in the dining hall.  They submitted a video allegedly showing Seal handcuffing Zantiz in the dining hall.  In the video, Seal does not hit or drag Zantiz.  Accordingly, the summary judgment defendants argued that Seal did not use any force against Zantiz in the dining hall, so they cannot be liable

---

[4] Zantiz also sued Rayburn's warden, but the warden was dismissed from the suit and is not a party to this appeal.

for failure to protect.  They also argued that, even if Seal hit or otherwise used force against Zantiz in the dining hall, there was no evidence that they could have stopped Seal's use of force.  The district court denied the motion for summary judgment, holding that, because the video footage only showed approximately nine seconds of Seal's interaction with Zantiz, the footage was insufficient to controvert Zantiz's allegations about the dining hall incident.  The district court did not directly deal with the summary judgment defendants' contention that any alleged use of force would have happened too quickly for them to intervene.

Before the district court ruled on Forbes's motion to dismiss or the motion for summary judgment, Zantiz filed a motion to compel discovery.  All appellants objected to Zantiz's motion to compel on qualified immunity grounds.  They argued that they were completely immune from discovery because their qualified immunity defenses had not been considered.   The magistrate judge granted Zantiz's motion to compel discovery in part, determining that only some of the requested discovery was relevant to deciding the issue of qualified immunity.  The discovery order required the production of: "various employee conduct and training manuals and written policy statements, but only insofar as they relate to use of force against inmates, protection of inmates, their medical care and racial discrimination"; administrative remedies procedure materials "that relate to any grievance *asserted by plaintiff*" for the December 31, 2011 incident; each appellant's employment file for *in camera* review; and "the investigative materials concerning the subject prison incident in this case" for *in camera* review.  The appellants appealed the magistrate judge's discovery order to the district court, which dismissed the appeal as moot because, in the interim, it had rejected Forbes's and the summary judgment defendants' qualified immunity defenses.  The district court did not specifically mention Seal, Rigdon, Tullos, or Warner,

No. 14-30069

the appellants who had not yet filed motions raising the qualified immunity defense.

Forbes appeals the denial of his motion to dismiss. The summary judgment defendants appeal the denial of their motion for summary judgment. And all appellants appeal the discovery order. Zantiz did not file a response brief for the appeal.

### JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review a district court's interlocutory denial of a qualified immunity defense only "to the extent that the appeal turns on an issue of law." *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (internal quotation marks and citations omitted) (interlocutory denial of motion for summary judgment); *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008) (interlocutory denial of motion to dismiss).

We review de novo the denial of a motion to dismiss, taking all well-pleaded facts as true. *Brown*, 519 F.3d at 236. We also review de novo denial of a summary judgment motion, taking the facts in the light most favorable to the nonmoving party. *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014). That said, "[w]hen one party's description of the facts is discredited by the record, we need not take his word for it but should view 'the facts in the light depicted by [a] videotape.'" *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)). Further, because this appeal is interlocutory, "we consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Luna*, 773 F.3d at 718 (internal quotations marks and citation omitted). "We may review the district court's conclusion that issues of fact are material, but not the conclusion that those issues of fact are genuine." *Id.* (internal quotation marks omitted). "If the district court does not specify all the facts that it finds to be

7

in dispute, we conduct an analysis of the record to determine what issues of fact the district court likely considered genuine." *Kovacic v. Villarreal*, 628 F.3d 209, 211 n.1 (5th Cir. 2010) (internal quotation marks and citation omitted).

We generally lack jurisdiction to review discovery orders. *Backe v. LeBlanc*, 691 F.3d 645, 647–48 (5th Cir. 2012). But we have jurisdiction to review certain discovery orders in cases involving the qualified immunity defense. *Id.* at 648. In particular, we have jurisdiction to review such a discovery order if the district court does not first determine whether the plaintiff's pleadings, taken as true, are sufficient to overcome the qualified immunity defense. *Id.* We also have jurisdiction to consider a discovery order that has not been "narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507–08 (5th Cir. 1987)). We review such orders for abuse of discretion. *See id.* at 648–49 (reversing such an order because the district court abused its discretion by issuing it).

## DISCUSSION

### I. Forbes's Motion to Dismiss

Zantiz's federal claim against Forbes alleges constitutionally deficient medical care. "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain prescribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks and citation omitted). We have defined a "serious medical need" as "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Calwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

Forbes argues that he is entitled to dismissal because Zantiz does not identify any serious medical need. But this argument is waived because, at

the district court level, Forbes admitted that Zantiz's combination of alleged injuries would qualify as a serious medical need.  That is, in his motion to dismiss, Forbes stated:

> Accepting the allegations as true that plaintiff's injuries from the use of force included a bloody ear that, months later, still "pusses," that the EMT told the Lieutenant the plaintiff had a fractured rib, he had a "knot in the eye," and his back and neck have hurt since the incident, there is no doubt plaintiff would have identified a "serious medical need" for purposes of the Eighth Amendment analysis.

Thus, Forbes expressly disclaimed any argument that these allegations, taken as true, were not a serious medical need.

"Under our general rule, arguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate 'extraordinary circumstances.'" *State Indus. Prods. Corp. v. Beta Tech., Inc.*, 575 F.3d 450, 456 (5th Cir. 2009).  The burden is on Forbes to demonstrate that such extraordinary circumstances exist.  *Id.*  But he has not argued that extraordinary circumstances exist.  Thus, Forbes has waived his argument that Zantiz's injuries were not a serious medical need.

Forbes also argues that Zantiz's failure to seek additional treatment undermines his deliberate indifference claim.[5]  But it is not dispositive that the possibly fractured rib and other injuries did not later cause Zantiz such serious medical problems that he sought additional treatment.  The question is whether there was a substantial risk to the patient at the time that Forbes allegedly refused to provide additional treatment, not whether that risk

---

[5] This argument is not waived because Forbes argued in his motion to dismiss that the fact that Zantiz did not later seek medical treatment indicated that Zantiz "either . . . lied about suffering the injuries or exaggerated their severity."

actually materialized. *Gobert*, 463 F.3d at 349 n.30.[6] Thus, the fact that Zantiz never received additional medical treatment is irrelevant, except insofar as it tends to impeach Zantiz's sworn allegation that he suffered the alleged injuries. Of course, we cannot weigh these facts at the motion to dismiss stage.

Forbes also argues that he was not aware of a substantial risk of harm to Zantiz, so he was not deliberately indifferent. We disagree. Again, Zantiz's complaint alleges that Forbes verbally acknowledged that Zantiz was suffering from what Forbes now admits were serious medical needs, but Forbes refused to treat these injuries, telling Zantiz that "your black ass shouldn't have pissed Lt. Seal off." Taking these allegations as true, as we must, Forbes was aware of a serious medical need and refused to treat it without any justifiable medical or penological reason. Deliberate indifference can be demonstrated through such a refusal to treat. *Gobert*, 463 F.3d at 346.

Forbes argues that his lack of knowledge of a serious medical need is proven by a medical record he wrote concerning Zantiz's injuries on the date of the alleged beating. Among other things, this record notes that there was "no redness or bruising." We cannot consider this record at the motion to dismiss stage. Forbes cites cases where we have considered medical records in reviewing either the dismissal of a prisoner's in forma pauperis lawsuit as frivolous or the denial of a motion for summary judgment based on qualified immunity. But Forbes points to no cases where we have considered medical records at the motion to dismiss stage. Evidence that is outside the pleadings

---

[6] Forbes's argument that Zantiz "must have suffered objective harm from the allegedly inadequate treatment" also fails. He cites *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993), for the proposition that "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." But here Zantiz is alleging not that Forbes provided him with delayed medical care, but instead that Forbes denied him medical care altogether. Thus, we find *Mendoza* inapposite. *See Gobert*, 463 F.3d at 349 n.30.

cannot be considered for a motion to dismiss.  *See* Fed. R. Civ. P. 12(d) (providing that, for a motion to dismiss, "matters outside the pleadings" must be excluded by the court, or the motion "must be treated as one for summary judgment").

## II. Motion for Summary Judgment

On appeal, the summary judgment defendants raise the same arguments that they raised below.  First, they argue that the video conclusively shows that Zantiz's version of events in the dining hall is untrue. We disagree. As the district court noted, the video shows only about nine seconds of the interaction between Seal and Zantiz, during which time Seal handcuffs Zantiz and leads him off-frame.  The video continues for approximately twenty-two additional seconds after Seal and Zantiz leave the frame.  Moreover, the dining hall's exit is not visible in the video.  Thus, the video shows nothing regarding what happened between the time Seal and Zantiz leave the frame and the time they exit the dining hall.

The summary judgment defendants argue that the video contradicts Zantiz's *Spears* testimony, in which he testified that "I put my hands behind my back and while Mr. Mitchell was talking to me Lieutenant Seal came behind me, placed handcuffs on me, and punched me in the side of the head," and that Zantiz then asked Mitchell why Seal was punching him.  In contrast, the video shows Seal handcuffing Zantiz, but it does not show Seal punching Zantiz or Zantiz speaking to Mitchell after being handcuffed.  But Zantiz's *Spears* testimony does not specifically state that he was punched immediately after the handcuffs were applied, or that he spoke to Mitchell immediately after this punch.  The verified complaint is even less specific about the timeline, stating only that Seal punched him after he was handcuffed, and Zantiz spoke to Mitchell after that.  Thus, we cannot say that the district court disregarded a video that completely discredits Zantiz's version of events.

11

This situation is quite unlike that in *Scott v. Harris*, which held that the court of appeals erred in adopting the plaintiff's version of events when "[t]he videotape quite clearly contradicts [the plaintiff's] version of the story." 550 U.S. at 378–81. Instead, the district court here carefully considered the video and found that there was still a genuine issue of fact as to whether Seal punched Zantiz in the dining hall. *See Newman*, 703 F.3d at 762 (holding that, because there was "nothing in the three video recordings to discredit [plaintiff's] allegations," plaintiff's version of events controlled for summary judgment purposes). We lack jurisdiction to review the district court's factual determination when it is not wholly contradicted by the video evidence. *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995); *Luna*, 773 F.3d at 718 ("We may review the district court's conclusion that issues of fact are material, but not the conclusion that those issues of fact are genuine." (internal quotation marks and citation omitted)).

In the alternative, the summary judgment defendants argue that, given the short amount of time that Seal and Zantiz spent in the dining hall, they could not have intervened to protect Zantiz. A bystander liability claim like this one requires that the bystander officers "(1) know[ ] that a fellow officer is violating an individual's constitutional rights; (2) ha[ve] a reasonable opportunity to prevent the harm; and (3) choose[ ] not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (internal quotation marks omitted). The summary judgment defendants argue that the second element is not met because they could not have stopped Seal's excessive use of force.

The district court did not specifically address this argument. But we hold that it likely found a genuine issue of fact as to the speed of the encounter, and thus the window of time in which to intervene. *See Kovacic*, 628 F.3d at 211 n.1 ("[W]e conduct an analysis of the record to determine what issues of fact the district court likely considered genuine." (internal quotation marks

omitted)).  Again, the video does not provide a complete view of the dining hall.  Zantiz's verified complaint and *Spears* testimony do not definitively establish how quickly the events in the dining hall took place.  There is no other evidence in the summary judgment record that is directly related to the timing of the dining hall incident.  But Zantiz alleges in his sworn complaint that Seal "punched me on my left ear and twisted the cuffs and grabbed my shirt collar."  Other staff members "clearly observed" this punch.  Zantiz asked Mitchell why Seal punched him, and Mitchell responded "[o]h well" and ignored him.  At the *Spears* hearing, Zantiz provided sworn testimony that Seal then forced him out of the dining hall and, as they were going out the side door, punched him again.

We hold that the district court likely found that this evidence creates a genuine dispute about the timing of events within the dining hall.  Zantiz's sworn allegations, taken together, give rise to the inference that the events in the dining hall proceeded slowly enough that the summary judgment defendants could have intervened.  Thus, this question of timing is material as to whether the summary judgment defendants had a reasonable opportunity to prevent Seal's second punch and other uses of force following the first punch.

**III. Discovery Order**

All nine appellants appeal the discovery order.  We conclude that this appeal is moot as to the summary judgment defendants.  The district court determined that their qualified immunity defenses fail at the summary judgment stage, and we affirm that holding.  Thus, Zantiz is entitled to all appropriate discovery as to the summary judgment defendants, even discovery that does not relate to the qualified immunity defense.

As to the remaining appellants, we must determine whether we have jurisdiction to review the discovery order.  We have jurisdiction to review such an order if it does not follow the two-step procedure that we have mandated in qualified immunity cases.  *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014).

First, the district court must determine that the plaintiff's well-pleaded facts, taken as true, would overcome the qualified immunity defense. *Id.* at 485. Second, "if the court remains unable to rule on the immunity defense without further clarification of the facts, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Id.* (internal quotation marks omitted). Such an order must "identify any questions of fact [the district court] need[s] to resolve before it would be able to determine whether the defendants [are] entitled to qualified immunity." *Id.*[7]

We conclude that we have jurisdiction to review the discovery order here because it did not fulfill either step of this analysis. First, the order did not explicitly hold that Zantiz's pleadings, taken as true, overcame the qualified immunity defense. While some of the language in the discovery order implies that the magistrate judge thought that the pleadings overcame the qualified immunity defense, we have held that this holding must be made explicitly. *Id.* at 485 n.2.[8]

---

[7] One added complication is that Seal, Rigdon, Warner, and Tullos have not yet filed a motion to dismiss or motion for summary judgment based on the qualified immunity defense, unlike in our previous cases dealing with the interlocutory appeal of discovery orders. But all four of these appellants raised the qualified immunity defense in their answer, and they all argued to the magistrate judge and the district court that Zantiz's discovery motion should be denied based on the qualified immunity defense. Further, a district court need not rule on a motion to dismiss based on qualified immunity before issuing a discovery order. *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 997 n.27 (5th Cir. 1995). Accordingly, we hold that filing a motion to dismiss is not required before a defendant can assert qualified immunity as a defense to a discovery order.

[8] We note that the discovery order's error in failing to perform the first step of *Zapata* is moot as to Forbes because, in its later denial of Forbes's motion to dismiss, the district court ruled that Zantiz's pleadings overcame Forbes's qualified immunity defense. *See Foster v. City of Lake Jackson*, 28 F.3d 425, 428 n.6 (5th Cir. 1994) (holding that appeal of an order requiring defendants to "submit to discovery before adjudication of qualified immunity" was mooted by district court's subsequent ruling that defendants were not entitled to qualified immunity). But, in denying the motion to dismiss, the district court did not determine whether Forbes's qualified immunity defense would fail on summary judgment. Thus, he

No. 14-30069

The discovery order also fails the second step of *Zapata*. Even a "limited discovery" order does not satisfy the second step if "the district court [does] not identify any questions of fact it need[s] to resolve before it would be able to determine whether the defendants [are] entitled to immunity." *Zapata*, 750 F.3d at 484–85. Here, the discovery order fails under this standard because it does not identify the questions of fact that needed to be resolved before the qualified immunity issue could be addressed.

Thus, we conclude that the magistrate judge abused his discretion in issuing a discovery order that did not perform either of the steps described in *Zapata*. *See Backe*, 691 F.3d at 648 (finding abuse of discretion based on failure to perform steps described in *Zapata*). However, any error is moot as to the summary judgment defendants.[9]

## CONCLUSION

For the forgoing reasons, we AFFIRM the district court's order denying Forbes's motion to dismiss. We also AFFIRM its order denying summary judgment to the summary judgment defendants (Mitchell, Cleland, Kennedy, and Distefano). We DISMISS AS MOOT the summary judgment defendants' appeal of the discovery order. We VACATE the discovery order as to Seal, Rigdon, Warner, Tullos, and Forbes, and we REMAND with instructions to apply the two-step procedure described in *Zapat*

---

was still entitled to the application of *Zapata*'s second step limiting discovery, and his appeal as to this second step is not moot.

[9] And, again, the error in applying the first step is moot as to Forbes.

No. 14-30069

E. GRADY JOLLY, Circuit Judge, dissenting in part:

An officer's "mere presence at the scene, without more, does not by some mysterious alchemy render him legally responsible under section 1983 for the actions of a fellow officer." *Calvi v. Knox Cnty.*, 470 F.3d 422, 428 (1st Cir. 2006). Here, Zantiz has only produced competent summary judgment evidence to suggest that the summary judgment defendants were present at the time he was allegedly punched by Seal in the dining hall. He has provided no basis from which a jury could reasonably conclude that these defendants were in a position to come to his aid and prevent any additional excessive force. *Cf. Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Accordingly, I respectfully dissent from the majority's holding denying the defendants summary judgment on the basis of qualified immunity.

16