# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 16, 2012

No. 11-40460

Lyle W. Cayce
Clerk

BRANDON A. BACKE; JOSEPH P. BELLUOMINI;
SHANNON BELLUOMINI; CHRIS CORNWELL;
MATTHEW L. GOODSON; MICHAEL R. MCMILLAN;
DANIEL COLE O'BALLE; GILBERT E. O'BALLE, JR.;
JUSTIN PACKARD; CALVIN SILVA;
AARON TREVINO; CHARLES YOUNG,

Plaintiffs - Appellees

v.

STEVEN LEBLANC; Chief CHARLES B. WILEY, JR.,

Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and PRADO and SOUTHWICK, Circuit Judges.
EDITH H. JONES, Chief Judge:

Appellants Steven LeBlanc and Charles Wiley, former City Manager and former Chief of Police for the City of Galveston, respectively, seek review of a district court order permitting general discovery without resolving their assertions of qualified immunity. Appellants asserted immunity in a motion to dismiss in response to Appellees' myriad Section 1983 claims, and the district court concluded it was "premature" to address the qualified immunity defense before general discovery. Unfortunately, the district court abused its discretion

No. 11-40460

in withholding its ruling pending general discovery. We therefore VACATE the district court's order and REMAND.

## BACKGROUND

We need not elaborate on the allegations underlying this case in detail given its posture on appeal. Appellees claim that a City of Galveston police officer detained Cole O'Balle at a bar at the San Luis Resort on Galveston Island in the early hours between October 4-5, 2008. O'Balle's guests, celebrating at the bar following a wedding, pursued the officer, who became defensive and requested backup assistance. A large (but indeterminate) number of officers responded and a fracas broke out, resulting, according to Appellees, in police use of excessive force against O'Balle, his guests, and bystanders. According to Appellees, Chief Wiley "arrived at the scene, and observed the situation and allowed it to continue." This is the only *factual* allegation about Chief Wiley regarding the incident in the complaint; there are none about City Manager LeBlanc.

Appellees filed this Section 1983 suit against LeBlanc, Wiley, and over a dozen individual officers based on both the fracas itself and what Appellees describe as a "long history of acts of police brutality [and] excessive use of force," "constitut[ing] a policy and/or custom of the city and its law enforcement departments." Relevant to this appeal, Appellees alleged this history amounted to a City policy or custom, that LeBlanc and Wiley "authorized" or "ratified" this de facto policy, and that LeBlanc and Wiley were individually liable for failing to train the responding officers, especially on the appropriate use of force.

Appellants moved to dismiss based on qualified immunity under Federal Rule of Civil Procedure 12(b)(6), arguing that Appellees failed to plead specifically a City policy causing a deprivation of constitutional rights, facts plausibly demonstrating their deliberate indifference to Appellees' constitutional rights, and facts plausibly demonstrating that Appellants ratified or authorized

2

No.  11-40460

any unconstitutional conduct.  The district court refused to rule on Appellants' threshold qualified immunity defense, concluding that "[a]lthough qualified immunity might become a relevant defense to liability once the facts are known, it is too early to make that determination now."  It denied Appellants' motion to dismiss pending general discovery.[1]

LeBlanc and Wiley appeal, contending that the district court abused its discretion by failing to rule on their immunity claim before permitting general discovery.  Additionally, LeBlanc and Wiley argue that Appellees' constitutional claims fail for lack of plausibility in the first place, or for failure to articulate facts which plausibly overcome their qualified immunity defenses.

## DISCUSSION

The parties disagree as a threshold matter about whether this court has jurisdiction to review the district court's order.  We must, as always, determine our own jurisdiction before proceeding further.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 118 S. Ct. 1003, 1012-1013 (1998).

Appellate courts have jurisdiction over virtually all "final decisions" of the district court, 28 U.S.C. § 1291, a class that  ordinarily does not include discovery orders.  *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987).  Section 1291 does, however, include those interlocutory orders that "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] [are] effectively unreviewable on appeal from a final judgment."  *Texas v. Caremark, Inc.*, 584 F.3d 655, 657-58 (5th Cir. 2009).

A district court's denial of qualified immunity to public officials is exactly such an order.  As the Supreme Court has emphatically directed, "[q]ualified immunity is an immunity from suit rather than a mere defense to liability."

---

[1] The individual police officers who were allegedly directly involved in the events did not appeal the court's order denying their motions to dismiss.

No.  11-40460

*Pearson v. Callahan*, 555 U.S. 223, 237, 129 S. Ct. 808, 818 (2009) (internal quotation marks omitted).  Because immunity is "effectively lost if a case is erroneously permitted to go to trial," a denial of qualified immunity may be immediately appealed.  *Mitchell v. Forsyth*, 472 U.S. 511, 526-27, 105 S. Ct. 2806, 2815-16 (1985).  This court has applied *Mitchell* to trial court discovery orders that, through overbreadth, effectively deprive public officials of an immunity *from suit*.  *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994-95 (5th Cir. 1995)

One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive, *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986).  Consequently, this court has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense.  As we explained in *Wicks*, *supra*, a district court must first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."  *Id*.; *see also Ashcroft v. Iqbal*, 556 U.S. 667, 678-79, 129 S. Ct. 1937, 1949-50 (2009) (directing that a plaintiff must "state a claim for relief that is plausible on its face" — excluding statements that are "no more than conclusions" which are "not entitled to the assumption of truth").  Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.  *After* the district court finds a plaintiff has so pled, if the court remains "unable to rule on the immunity defense without further clarification of the facts," it may issue a discovery order "narrowly tailored to uncover only those facts needed to rule on the immunity claim."  *Lion Boulos*, 834 F.2d at 507-08.

No.  11-40460

This court lacks jurisdiction to review interlocutory orders in qualified immunity cases complying with these requirements.  *See, e.g.*, *Edwards v. Cass Cnty., Tex.*, 919 F.2d 273, 275-76 (5th Cir. 1990).  But we may review the order under the collateral order doctrine when a district court fails to find first that the plaintiff's complaint overcomes a defendant's qualified immunity defense, *Wicks*, 41 F.3d at 994-95; when the court refuses to rule on a qualified immunity defense, *Helton*, 787 F.2d at 1017; or when the court's discovery order exceeds the requisite "narrowly tailored" scope, *Lion Boulos*, 834 F.2d at 507-08.

For materially the same reasons, we both have jurisdiction to review and must vacate the district court's order here.  The court stated that it was "premature to address the defendant's assertions of qualified immunity before discovery has taken place," but as the Supreme Court has noted, that is *precisely* the point of qualified immunity: to protect public officials from expensive, intrusive discovery until and unless the requisite showing overcoming immunity is made.  Even if we liberally interpret the district court's order as making the requisite finding that Appellees pled facts overcoming qualified immunity, the district court was permitted to authorize only discovery narrowly tailored to rule on Appellants' immunity claims.  An order that simultaneously withholds ruling on a qualified immunity defense while failing to constrain discovery to develop claimed immunity is by definition not narrowly tailored.  The district court doubly abused its discretion by (apparently) refusing to rule on LeBlanc's and Wiley's motions to dismiss and by failing to limit discovery to facts necessary to rule on their qualified immunity defense.

## CONCLUSION

For these reasons, this court has appellate jurisdiction over the district court's order whose effect denied these officials the benefits of orderly handling of their qualified immunity defense.  We must vacate and remand, and we

No.  11-40460

instruct the court to follow the procedures outlined in *Lion Boulos*, *Helton*, and *Wicks*.

**VACATED and REMANDED with INSTRUCTIONS.**