Joshua D. **ZOLLICOFFER;** aka **Passion Star, Plaintiffs,**

v.

Brad **LIVINGSTON, et al., Defendants.**

**CIVIL ACTION NO. 4:14–CV–03037**

United States District Court, S.D. Texas, Houston Division.

Signed March 14, 2016

25. *See* Doc. #34-13, pp. 14-18.

Christopher J. Kondon, Christina Noel Goodrich, Saman M. Rejali, K&L Gates LLP, Los Angeles, CA, Jael Humphrey-Skomer, Demoya R. Gordon, New York, NY, Paul David Castillo, Kenneth D. Upton, Jr., Lambda Legal Defense and Education Fund Inc., Dallas, TX, for Plaintiffs.

Kim J. Coogan, Christin Cobe Vasquez, Office of the Attorney General, Austin, TX, for Defendants.

Kenneth Dean, pro se.

### ORDER

THE HONORABLE ALFRED H. BENNETT, UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff Joshua D. Zolicoffer aka Passion Star's Amended Complaint (Doc. # 35), Defendant Brad Livingston's Motion to Dismiss (Doc. # 40), and Plaintiff's Response (Doc. # 54). Having considered the arguments and the applicable law, the Court defers ruling on Defendant's Motion for the reasons set forth in this Order.

## I. Background

### A. Plaintiff's Circumstances

Plaintiff is a transgender woman who has been in jail in Texas for over 12 years.[1] Doc. # 35 ¶ 1. During that time, she has been repeatedly raped, forced into nonconsensual sexual relationships, and assaulted when she resisted demands. This has occurred in each of seven different prison units in which she was housed. She alleges that prison officials have ignored her pleas for protection. In this Section 1983 action, Plaintiff sues Defendant Brad Livingston, the Executive Director of the Texas Department of Criminal Justice ("TDCJ"), alleging that he knows inmates regularly prey on gay and transgender prisoners but is deliberately indifferent to their plight.[2]

Taking Plaintiff's allegations as true, her Complaint recounts over a dozen different incidents of rape, assault, or forced sexual relationships by different inmates at the TDCJ. She identifies them by their initials in an attempt to avoid retaliation. Doc. # 35 ¶ 33 n.5. For example, around March 2007, Plaintiff was placed in a cell with an inmate named C.X., who threatened her with a knife, held her down, and raped her. *Id.* at ¶ 36–37. When Plaintiff reported the rape to a guard, C.X. threw a fan at Plaintiff's head. *Id.* A nurse treated Plain-

---

1. Plaintiff was sentenced to twenty years in prison for aggravated kidnapping. Doc. # 35 ¶ 29. According to Plaintiff, her ex-boyfriend refused to return a used Chevrolet that he was testdriving to the dealership. *Id.* at n.4. Instead, he drove around for nearly two hours with the salesman trapped in the passenger seat and Plaintiff in the back seat. *Id.*

2. Plaintiff originally sued numerous other TDCJ officials as well. But the motion to dismiss against Livingston is the only one before the Court at this time, as the parties agreed at a hearing on September 15, 2015.

tiff after the rape and noted "dried secretions to the anal area" and an abrasion on the top of her head. *Id.* at ¶ 38. After the incident, Plaintiff was placed in solitary confinement for two weeks. *Id.* at ¶ 39. On November 20, 2013, after Plaintiff reported threats against her to TDCJ officials, an inmate named J.T. slashed Plaintiff's face with a razor and called her a "snitching faggot" while other members of J.T.'s gang looked on. *Id.* at ¶ 68. Plaintiff required 36 sutures to close the wounds, which left prominent raised scars on her face. *Id.* at ¶ 69–70.

Plaintiff reported these incidents and many others to officials at the TDCJ, but they did little. For example, after a cellmate named O.R. threatened to rape her and forced her to watch him masturbate, and another inmate named P.O.X. demanded that she perform sexual acts for him, Plaintiff reported the threats to TDCJ staff verbally and in writing and requested safekeeping. *Id.* at ¶ 40. In response, correctional officers called her a "faggot" and told her that "you can't rape someone who's gay." *Id.* at ¶ 41.

The record is replete with similar requests and denials. *See id.* at 47 (five written requests to transfer Plaintiff to a safer dormitory between December 2012 and May 2013 denied); *Id.* at ¶ 49 (April 19, 2013 request for safekeeping denied, and TDCJ officials placed her at further risk of assault by calling her a "snitch" and "punk" in front of other inmates); *Id.* at ¶ 52 (May 20, 2013 request for safekeeping denied because "there was no evidence or witnesses presented to substantiate your claims."); *Id.* at ¶ 54 (request for safekeep-

ing denied on October 22, 2013 for insufficient evidence); *Id.* at ¶ 55 (October 17, 2013 letter to Hughes unit Senior Warden Kenneth Dean ignored); *Id.* at ¶ 57–58 (November 4, 2013 meeting with Unit Classification Committee ("UCC") headed by Hughes Unit Major Ralph Marez Jr. resulted in denial of safekeeping request); *Id.* at ¶ 59–61 (November 6, 2013 written grievance appealing the UCC's decision denied because "[y]ou did not meet the criteria to be placed in safekeeping"); *Id.* at ¶ 85 (request for Offender Protection Investigation ("OPI") denied on or around December 11, 2013, and Plaintiff told to "suck dick, fight or quit doing gay shit and you'll be okay but quit running me with OPI's").

**B. Defendant's Knowledge**

Plaintiff alleges that Brad Livingston, Executive Director of the TDCJ, was aware of the particular vulnerability of gay and transgender prisoners to sexual abuse at TDCJ facilities, but did not take appropriate action to stop it.

Texas prisons have some of the highest levels of sexual abuse in the country. In 2007, the Bureau of Justice Statistics ("BJS") surveyed 146 prisons and reported that five of the ten prisons with the highest levels of sexual abuse were in Texas. Doc. # 54 at 16.[3] In 2008 and 2009, the BJS found that the TDCJ's Hughes Unit reported the highest rate of inmate-on-inmate sexual assault in the country at 8.6%. *Id.*[4] The second-highest was at the TDJC's Allred Unit, at 7.6%. *Id.* Plaintiff was housed in both. From September 2012 to August 2013, the TDCJ's Office of

**3.** Allen J. Beck & Paige M. Harrison, Bureau of Justice Statistics, *Sexual Victimization in State and Federal Prisons Reported by Inmates, 2007* at 1–2 (2008), *available at* http://www.bjs.gov/content/pub/pdf/svsfpri07.pdf. The Court takes judicial notice of the BJS reports and other government reports and websites cited in this Order. *See Hyder v. Quarterman,*

No. CIV.A. C–07–291, 2007 WL 4300446, at *3 (S.D.Tex. Oct. 10, 2007).

**4.** Allen J. Beck & Paige M. Harrison, Bureau of Justice Statistics, *Sexual Victimization in Prisons and Jails reported by Inmates,* 2008-09 at 7 (2010), *available at* http://www.bjs.gov/content/pub/.pdf/svpjri0809.pdf

the Inspector General documented 378 allegations of inmate abuse, including 14 incidents in Hughes, 18 in Robertson, and 24 in Clemens—three units where Plaintiff has been housed. *Id.* [5]

Transgender inmates in particular face a shockingly high rate of sexual abuse in prison. The BJS reported that 34.6% of transgender inmates reported being .the victim of sexual assault.[6] That is nearly nine times the rate for all prisoners, which is 4.0%.[7] The vulnerability of transgender prisoners to sexual abuse is no secret. For example, the National Institute of Corrections has stated that "research on sexual abuse in correctional facilities consistently documented that men and women with nonheterosexual orientations, transgender individuals, and people with intersex conditions were highly vulnerable to sexual abuse." [8]

Plaintiff alleges that Defendant Livingston was aware of the particular vulnerability of gay and transgender prisoners to sexual abuse. In 2011, the Department of Justice's Review Panel on Prison Rape called Defendant to account for the statistics concerning sexual assault at the TDCJ facilities. *Id.* at 17.[9] The Panel observed that the TDCJ's practice did not appear to conform to its policies for addressing sexual assault.[10] The Panel also recommended greater protection for vulnerable prisoner populations, in particular Lesbian, Gay, Bisexual and Transgender ("LGBT") inmates, noting that "at Allred, there seems to be considerable sentiment that when you're gay, you can't be raped." [11] The Panel suggested that prison administrators provide "consistent, uniform best practices, training, and education" regarding sexual assault.[12]

Defendant is also the Chair of the Standards Committee for the American Correctional Association ("ACA"). Doc. # 54 at 14–15. He personally participated in hearings on the Prison Rape Elimination Act ("PREA"), submitted comments, and provided documents that a PREA commission used in preparing its recommendations. *Id.* The PREA standards are incorporated in the TDJC's policy. *Id.* at 16. Plaintiff alleges that among the TDCJ's policies is a recommendation that an in-

---

5. Texas Department of Criminal Justice, *Safe Prisons Program* at 39 to 41 (2014), available at http://www.tdcj.state.tx.us/documents/ PREA_SPP_Report_2013.pdf.

6. Allen J. Beck, Bureau of Justice Statistics, *Sexual Victimazation in Prisons and Jails Reported by Inmates, 2011-12, Supplemental Tables: Prevalence of Sexual Victimization Among Transgender Adult Inmates* (2014), *available at* http://www.bjs.gov/content/pub/ pdf/svpjri1112_st.pdf. The 34.6% figure represents the BJS' weighted average of three surveys conducted in 2007, 2008-09, and 20011-12. *Id.*

7. Allen J. Beck et al., Bureau of Justice Statistics, *Sexual Victimization In Prisons And Jails Reported By Inmates, 2011–12–Update* (last visited December 15, 2015), *http://www.bjs. gov/index.cfm?ty=pbdetail & iid=4654.*

8. National Institute of Corrections, *LGBTI Policy Review and Development Guide,* (last visited Dec. 1, 2015), http://info.nicic.gov/ lgbti/?q=node/3.

9. *See* Department of Justice, Review Panel on Prison Rape, *Hearings on Rape and Staff Misconduct in U.S. Prisons* (April 27, 2011) *available at* http://ojp.gov/reviewpanel/pdfs_apr11/ testimony_livingston.pdf.

10. *Id.* at 9. Plaintiff quoted the Panel as saying that the TDCJ's "practice does not appear to conform to [its] policies" and recommending "training to staff on the vulnerability of homosexual inmates and to take steps to protect them from sexual assault." Doc. # 54 at 17. Although that is basically what the Panel said, the Panel did not use those exact words in the transcript.

11. *Id.* at 18.

12. *Id.* at 16.

mate's sexual orientation and gender identity be taken into account when assigning housing, including placement in safekeeping, to reduce the possibility of sexual abuse. Doc. # 35 at ¶ 129. Plaintiff also alleges that the TDCJ's internal training documents note that LGBT people are vulnerable to sexual abuse while incarcerated. *Id.*[13] Plaintiff also alleges that Defendant has been confronted with numerous complaints and lawsuits by LGBT people related to sexual and physical assault in TDCJ facilities. *Id.* at 16.

### C. The TDCJ's Policies

Plaintiff also alleges in contrast to the TDCJ's written policies, the actual policies condoned by Defendant fail to offer gay and transgender inmates appropriate protection.[14] Doc. # 54 at 21. Plaintiff alleges that Defendant's policies at the TDCJ:

- Fail to screen inmates appropriately or use available information to separate vulnerable inmates from likely aggressors, and ignores that LGBT inmates and inmates who have been sexually abused are substantially vulnerable to future abuse. *Cf.* 28 C.F.R. § 115.41 (Prison Rape Elimination Act National Standards) (requiring that inmates be screened for vulnerability and separated from likely aggressors, taking into account "whether the inmate is or is perceived to be gay, lesbian, bisexual,

transgender, intersex, or gender nonconforming").

- Provide insufficient supervision to protect inmates from sexual abuse due to failure to recruit and retain qualified employees and the lack of video surveillance. *Cf.* 28 C.F.R. § 115.13 (requiring "adequate levels of staffing, and, where applicable, video monitoring, to protect inmates against sexual abuse").

- Provide perfunctory and inadequate training on preventing sexual abuse and responding to allegations of threatened sexual abuse. Doc. # 35 ¶ 151. PREA training is considered a joke for many TDCJ employees, who believe that sexual assault of LGBT people is funny. *Id.* High turnover rates and the influx of new staff means that many staff have not been trained or had only basic training. *Id.* at ¶¶ 151–52. *Cf.* 28 C.F.R. § 115.31 (requiring training on a "zero-tolerance policy" for sexual abuse).

- Condone a culture of degradation and disrespect for LGBT people, pursuant to which it is common for TDCJ staff to call inmates "faggot" and "punk," to speak to them in a derogatory manner, to suggest that gay incarcerated people enjoy being raped, and to allow other incarcerat-

---

**13.** Plaintiff does not cite to a copy of the TDCJ's written policies or internal training documents or point to where the Court might find them. But the Court will take Plaintiff's well-pled facts as true for the purposes of this *Motion to Dismiss. See Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir.2004).

**14.** Plaintiff also argues that Defendant's policies violate specific provisions of the Prison Rape Elimination Act National Standards, 28 C.F.R. § 115 *et seq.* Courts have held that the PREA does not establish a private cause of action for allegations of prison rape. *See*

*Krieg v. Steele,* 599 Fed.Appx. 231, 232 (5th Cir.2015) (unpublished) (citing cases). The Court will not now address what effect, if any, the PREA regulations would have in this case. *See Ard v. Rushing,* 597 Fed.Appx. 213, 220 n. 6 (5th Cir.2014) (unpublished) (noting that Prison Rape Elimination Act had no relevance in case where prisoner alleged Eighth Amendment violations because "[e]ven if [Plaintiff] is correct that [[Defendant's] policies fail to 'adhere to those national standards,' [Plaintiff] is not pursuing a cause of action under that statute.").

ed people to target LGBT people for abuse because of their sexual orientation and/or gender identity. Doc. # 35 ¶ 153. *Cf.* 28 C.F.R. § 115.31(a)(9) (requiring training on "[h]ow to communicate effectively and professionally with ... lesbian, gay, bisexual, transgender, intersex, or gender nonconforming inmates").

- Allow for perfunctory and incomplete investigation of inmate complaints about sexual abuse, ignoring or refusing to actively investigate grievances and other complaints and retaliating against persons who file grievances to deter future complaints. Doc. # 35 ¶ 155. *Cf.* 28 C.F.R. §§ 115.34., 71 (requiring correctional officers to gather and preserve direct and circumstantial evidence of sexual abuse; take immediate action to protect inmates from a substantial risk of imminent sexual abuse; and take an active role in the investigation, interviewing alleged victims, suspected perpetrators, and witnesses, and reviewing prior complaints and reports of sexual abuse involving the suspected perpetrator).

- Use the threat of isolation, including so-called "protective custody," and other forms of retaliation to deter safety-related complaints. Doc. # 35 ¶¶ 147–62. *Cf.* 28 C.F.R. § 115.43 (prohibiting the use of involuntary segregated housing unless a determination has been made that there is no available alternative means of separation from likely abusers and, in any case, only "until an alternative means of separation from likely abusers can be arranged").

Doc. # 54 at 21–22.

On October 23, 2014, Plaintiff sued Defendant under Section 1983, alleging violations of her Eighth Amendment right to be free from cruel and unusual punishment. She seeks damages and injunctive relief ordering Defendant to keep her out of the general population and in safekeeping. She also seeks the expungement of any disciplinary violations on her record connected to Defendant's failure to protect her. Doc. # 35 at 50.

Defendant moves to dismiss, arguing that Plaintiff has failed to state a claim against Defendant, or in the alternative, that Defendant is entitled to qualified immunity for his actions. Defendant moves to dismiss both for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Currently, Plaintiff is in safekeeping pending the outcome of these proceedings by agreement of the parties. Doc. # 54 at 8.

## II. Legal Standard

### A. Motion to Dismiss Under Rule 12(b)(1)

The court must dismiss a case when the petitioner fails to establish subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). *See also Serv. Employees Int'l, Inc. v. Dimensions Int'l,* No. CIV.A. H–09–2878, 2010 WL 5173305, at *3 (S.D.Tex. Dec. 13, 2010). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Federal Election Com'n,* 138 F.3d 144, 151 (5th Cir.1998). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted). The burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Stockman,* 138 F.3d at 151.

## B. Motion to Dismiss Under Rule 12(b)(6)

A party can seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir.2004). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

## C. Qualified Immunity

Qualified immunity shields government officials performing discretionary functions from liability for civil damages so long as their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002) (en banc). In the context of a motion to dismiss, the plaintiff's burden is discharged if "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir.

2012) (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir.1995)).

To overcome a defense of qualified immunity, the plaintiff must satisfy a "two-prong test." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir.2005). First, the plaintiff must allege that the defendants committed a constitutional violation under current law. *Id.* Second, the plaintiff must allege that "the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* The order by which the Court evaluates these two questions is now left to the Court's discretion. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

## III. Analysis

Although Plaintiff initially sued a number of TDCJ officials, the only Defendant before the Court now is Brad Livingston, Executive Director of the TDCJ. First, the Court will address whether Plaintiff has stated a claim under Section 1983. Next, the Court will consider whether Plaintiff has alleged sufficient facts to defeat a qualified immunity defense. Finally, the Court will consider whether Plaintiff's claims for injunctive relief are cognizable.

"Section 1983 provides a private right of action for violations of federal law by those acting under color of state law." *Wells v. Thaler*, 460 Fed.Appx. 303, 308 (5th Cir. 2012). To bring a claim under Section 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994). The first element of the analysis overlaps with the qualified immunity defense. There is no dispute as to the second element that

Defendant, Executive Director of the TDCJ, acted under color of state law.

Section 1983 does not attach liability to supervisory officials for the misdeeds of their subordinates under a theory of vicarious liability or respondeat superior. *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 381 (5th Cir.2005). Instead, "[a] supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir.2011) (quoting *Gates v. Texas Dep't of Protective & Regulatory Servs.,* 537 F.3d 404, 435 (5th Cir.2008)). "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Id.* (emphasis in original). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 446–47 (citation omitted).

### A. Whether Plaintiff Stated A Claim Under Section 1983

Plaintiff alleges that Defendant violated her Eighth Amendment rights by failing to take reasonable safeguards to protect Plaintiff and other gay and transgender individuals from a substantial risk of violence, sexual assault, and sexual exploitation, knowing that transgender persons are particularly vulnerable to that type of danger. Doc. # 54 at 9.

#### 1. Principles

Under the Eighth Amendment, the government may not inflict cruel and unusual punishment. The Eighth Amendment applies to the states by way of the Due Process Clause of the Fourteenth Amendment. Failure to protect a prisoner from violence at the hands of other prisoners may violate the Eighth Amendment. The Supreme Court formally recognized and described this failure-to-protect theory in *Farmer v. Brennan:*

> [P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners. . . . [G]ratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objectiv[e], any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Johnson v. Johnson,* 385 F.3d 503, 524–25 (5th Cir.2004) (citing *Farmer v. Brennan,* 511 U.S. 825, 833–34, 114 S.Ct. 1970, 128 L.Ed. 2d 811 (1994)) (second and fifth alterations in original) (citations and internal quotation marks omitted).

The Court went on to explain that, to succeed on such a claim, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials acted with "deliberate indifference" to the inmate's safety. 511 U.S. at 834, 114 S.Ct. 1970. An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. 1970. The official's knowledge of the risk can be proven through circumstantial evidence, such as by showing that the risk was so obvious that the official must have known about it. *Id.* at 842, 114 S.Ct. 1970.

#### 2. Application

Here, the Court finds that Plaintiff has sufficiently alleged a violation of Plain-

tiff s Eighth Amendment rights. There is no question that Plaintiff was incarcerated under conditions posing a substantial risk of serious harm. In addressing this Motion to Dismiss, the Court has recounted only a fraction of the horrific series of assaults, rapes, and abuses endured by Plaintiff during her time as an inmate at the TDCJ. They are enough to offend even the sternest of dispositions.

■ Plaintiff has also sufficiently alleged that Defendant knew of and disregarded this substantial risk to Plaintiff's safety. BJS statistics reveal high rates of sexual assault at TDCJ facilities, and the Office of the Inspector General has documented numerous allegations of inmate abuse there. Further, Defendant was well-positioned to know about the problem. In addition to his role as Executive Director of the TDCJ, Defendant personally participated in PREA hearings about prison rape and is the Chairman of the Standards Committee for the ACA. The Department of Justice called Defendant to account for the alarming statistics concerning sexual assault at the TDCJ, specifically noting the vulnerability of gay and transgender prisoners to abuse. Moreover, Plaintiff alleges that the TDCJ's own internal documents and policies note that LGBT people are particularly vulnerable to sexual abuse, and recommend that an inmate's sexual orientation be taken into account in housing decisions. Nor is it any secret that gay and transgender prisoners are vulnerable to abuse in prison. Given the foregoing, it is difficult to believe that Defendant did not know about the problem. In any case, Plaintiff has done more than plead a threadbare recital of the elements of a cause of action, *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. The Court finds that Plaintiff has sufficiently alleged facts to show that Defendant knew of, and was deliberately indifferent to, the high risk of

sexual assault of gay and transgender inmates at the TDCJ facilities.

### 3. Supervisory Liability

Plaintiff alleges that Defendant failed to train, supervise, or promulgate policies at the TDCJ to stem the problem of sexual abuse against gay and transgender inmates. Defendant argues that claims for failure to train and supervise are claims for respondeat superior, which are not cognizable under Section 1983.

But Plaintiff is not seeking to hold Defendant vicariously liable for the actions of his subordinates. Instead, Plaintiff seeks to hold Defendant liable for *his own conduct* in failing to train and supervise TDCJ personnel or implement policies to deal with the problem of sexual assault against gay and transgender inmates. Supervisory liability in that context is alive and well. *See Morgan v. Texas Dep't of Criminal Justice McConnell Unit,* 537 Fed.Appx. 502, 509 (5th Cir.2013) ("A defendant may not be held liable under § 1983 pursuant to a theory of respondeat superior, but may be held liable for his or her role in a constitutional violation premised on the defendant's individual conduct as a supervisor, for example, his or her failure to train."); *Martone v. Livingston,* No. 4:13–CV–3369, 2014 WL 3534696, at *7 (S.D.Tex. July 16, 2014) (Plaintiff could hold TDCJ prison officials liable in supervisory capacity for "creating and approving the dangerous conditions that caused [Plaintiff's] heat stroke, and failing to remedy them."). Accordingly, the Court finds that Plaintiff has stated a claim against Defendant in his supervisory capacity.

### B. Whether Defendant Is Entitled To Qualified Immunity

#### 1. The Reasonableness of Defendant's Conduct

Even if Plaintiff has sufficiently alleged a violation of her Eighth Amendment

rights, Defendant may be entitled to qualified immunity for his actions.[15] The first prong of the qualified immunity analysis asks whether Defendant committed a constitutional violation under current law. *Atteberry*, 430 F.3d at 253. This prong overlaps with the analysis under Section 1983, and the Court has already found that Plaintiff stated a claim for violation of her Eighth Amendment rights. For the reasons discussed above, the Court finds that Plaintiff has overcome the first prong of the qualified immunity defense.

■ However, Defendant may still be entitled to qualified immunity under the second prong of the analysis if his actions were not "objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* In other words, "[u]nder *Farmer*, prison officials violate the Eighth Amendment only if they are both aware of a substantial risk to inmate safety *and* fail to respond properly." *Johnson*, 385 F.3d at 525 (emphasis in original). "The *Farmer* Court emphasized that there is no Eighth Amendment violation if the official 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Id.* (citing *Farmer*, 511 U.S. at 844, 114 S.Ct. 1970).

It is not exactly clear what type of action a prison official must take to protect LGBT prisoners. But sending an LGBT prisoner back the general population to fight off attackers is not a reasonable response:

> Although it is not clear exactly what type of action an official is legally re-

quired to take under *Farmer*, the Supreme Court's opinion does make it abundantly clear that an official may not simply send the inmate into the general population to fight off attackers.... The defendants, at least according to Johnson, repeatedly expressed the view that Johnson must "learn to f* * * or fight," which runs directly counter to Farmer's directive. Given the facts that we must assume for purposes of this appeal, this was not a reasonable response and it indeed contravenes clearly established law.

*Johnson v. Johnson*, 385 F.3d 503, 527 (5th Cir.2004) (internal citations and quotation marks omitted) (noting that *Farmer* was factually similar to *Johnson* in that it involved an effeminate prisoner who was raped after he was put in the general prison population—as does this case).

Here, TDCJ officials responded to Plaintiff's plight by repeatedly placing her back into the general population of the TDCJ, where she alleges she was sexually assaulted in each of the seven different prison units where she was housed. Her complaints were ignored. Her repeated requests for safekeeping were denied. She was told to "suck dick, fight or quit doing gay shit and you'll be okay." Doc. # 35 at ¶ 85. That "runs directly counter to *Farmer's* directive," and contravenes clearly established law. *Id.* Accordingly, Plaintiff has alleged facts that could defeat qualified immunity.

The Court notes that this case is distinguishable from *Johnson*, in which the Executive Director of the TDCJ was afforded

**15.** Defendant cites *Elliott v. Perez* for the proposition that a heightened pleading standard is applicable when a defendant-official raises the defense of qualified immunity. 751 F.2d 1472, 1473 (5th Cir.1985). But that holding was abrogated by the Supreme Court in *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 163, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993) ("[a] federal court may not apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a)—in civil rights cases alleging municipal liability under § 1983.").

qualified immunity. In *Johnson*, decided on summary judgment, a gay prisoner brought a Section 1983 suit against fifteen prison officials—including the then-Executive Director of the TDCJ—after he was repeatedly raped and sold as a sexual slave during his eighteen month incarceration at the TDCJ. *Id.* at 512. The court reversed the district court's denial of qualified immunity to the Executive Director, finding that he was qualifiedly immune because he responded reasonably to the plaintiff's complaints by referring the matter for investigation or taking similar steps. *Id.* at 526. The court noted that "given the size of the operation that [he] oversee[s], [the defendant] cannot be expected to intervene personally in response to every inmate letter [he] receive[s]." *Id.*

Here, although the facts are similar, the legal theory is different. Rather than allege that Defendant failed to reasonably respond to her complaints, as the plaintiff did in *Johnson*, here Plaintiff directly challenges Defendant's policies in failing to protect gay and transgender inmates from abuse. The reasonableness of those policies, or lack thereof, is what is at issue here.

### 2. Deferring a Decision on Qualified Immunity

■ Although Plaintiff has alleged facts that could defeat qualified immunity, the reasonableness of Defendant's conduct is another question. Prisons are dangerous places, and the State's resources are limited. Questions need to be answered before the Court can make a decision on qualified immunity. Specifically, more facts are needed before the Court can say whether Defendant's conduct was reasonable.

The Fifth Circuit "has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense." *Backe v. LeBlanc,* 691 F.3d 645, 648 (5th Cir.2012). The court must find that the plaintiff has pled "specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* "[I]f the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'" *Id.* (citation omitted).

Here, the Court will order limited discovery tailored to the issue of qualified immunity. The Court finds the decision in *Martone v. Livingston* instructive on this point. No. 4:13–CV3369, 2014 WL 3534696 (S.D.Tex. July 16, 2014) (Ellison, J.). In *Martone*, the plaintiff brought a Section 1983 claim against Livingston (the same defendant as here) and other defendants for the heat-related death of a prisoner at the TDCJ. *Id.* at *1. The court denied Livingston's motion to dismiss, holding that "Plaintiff's allegations that the TDCJ Defendants failed to act, despite their knowledge of the risks to heat-sensitive inmates and the resulting heat-related deaths, rises to the level of deliberate indifference sufficient to state a claim for supervisory liability under § 1983." *Id.* at *7.

But the court deferred the qualified immunity decision—whether Livingston's actions were reasonable in light of clearly established law—until after limited discovery. *Id.* at *8–9. Following the lead of other cases,[16] the court found that more

---

16. The *Martone* court looked to the decisions in *Webb v. Livingston*, No. 6:13cv711, 2014 WL 1049983, at *8 (E.D.Tex. Mar. 14, 2014) (Schneider, J.) and *Hinojosa v. Livingston*, No. 2:13–cv–319, 2014 WL 1276199, at *7 (S.D.Tex. Mar. 27, 2014) (Ramos, J.) for its discovery guidelines, in which parallel litigation was ongoing.

information was needed, such as how the defendants learned about prisoner deaths, whether the defendants ordered studies into the cost of reducing extreme temperatures, whether the defendants considered other options, etc. *See id.* at *9 n.4 (setting forth the bounds of limited discovery).

Here, the Court will do the same. Given the outstanding factual questions presented, the Court defers ruling on qualified immunity until some discovery has taken place. Discovery shall be limited to the personal knowledge and conduct of Defendant as it relates to Plaintiff's circumstances. Discovery may include: Defendant's knowledge of abuse against gay and transgender prisoners at the TDCJ, including any prisoner complaints during the past five years and how Defendant responded to them; Defendant's knowledge of the vulnerability of gay and transgender inmates to sexual abuse; any advice that Defendant received or gave regarding the plight of gay and transgender prisoners at TDCJ facilities; and any policies, procedures, or training that the TDCJ adopted or considered adopting, and whether they were followed in Plaintiff's case.

## C. Injunctive Relief

### 1. *Prospective*

■ Plaintiff seeks injunctive relief to keep her out of the general prison population or in safekeeping. Defendant argues this request is moot because when Plaintiff made the request, she was housed in the Robertson and Hughes units, but since then, she has been moved to the Clements unit. Doc. # 40 at 8. Thus Defendant argues that there is no "reasonable likelihood" that she will again be moved to Hughes or Robertson. *Id.*

That argument misses the point. Plaintiff alleges that she suffered unconstitutional conditions at many different prison units within the TDCJ. Which one she is housed in at the moment does not matter. If not for the current safekeeping agreement between the parties, Plaintiff could be moved again at any time. Case in point, by the time Plaintiff filed her Response to Defendant's Motion to Dismiss, Plaintiff was moved yet again, to the Telford unit. Doc. # 54 at 28. Plaintiff's transfers to different units are "capable of repetition, yet evading review," and thus Plaintiff's request for injunctive relief is not moot. *See Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (U.S.1975).

### 2. *Retrospective*

■ Plaintiff also seeks expungement of her disciplinary records at the TDCJ. Defendant argues that this constitutes retrospective injunctive relief in violation of the Eleventh Amendment. That is not so, because the request for expungement is prospective in effect. *See Wolfel v. Morris,* 972 F.2d 712, 719 (6th Cir.1992) (finding that expungement of disciplinary records, based upon punishment imposed in violation of First Amendment, awarded only prospective relief since, "[a]s a practical matter, the district court's order merely prevents the prison system from considering the discipline imposed in this case as part of the inmates' records in the future."); *Elliott v. Hinds,* 786 F.2d 298, 302 (7th Cir.1986) ("[t]he injunctive relief requested here, reinstatement and expungement of personnel records, is clearly prospective in effect and thus falls outside the prohibitions of the Eleventh Amendment."). In any case, Plaintiff later withdrew her request for expungement. Doc. # 54 at 30 n.18. Instead, she asks that the TDCJ not be allowed to deny her protection in the future based on past disciplinary infractions she incurred because of TDCJ officials' failure to protect her. That is prospective relief, not retrospective

relief, and does not violate the Eleventh Amendment.

## IV. Conclusion

Plaintiff was sentenced to serve time in prison. She was not sentenced to be raped and assaulted by her fellow inmates. As the Supreme Court stated in *Farmer*, "gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective.... Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." 511 U.S. at 833–34, 114 S.Ct. 1970 (internal citations and quotation marks omitted). To the extent that Defendant failed to establish reasonable policies and procedures or to train and supervise TDCJ staff to prevent this from happening, he may be held liable under Section 1983.

For the reasons stated in this Order, the Court DEFERS its decision as to the qualified immunity of Defendant. The Court orders limited discovery into the knowledge and actions of Defendant with respect to the policies, or lack thereof, that led to Plaintiff's abuse.

Plaintiff shall remain in safekeeping until such time as the Court orders otherwise.

It is so ORDERED.