# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 12, 2021

Lyle W. Cayce
Clerk

No. 20-10383

Nicole Hutcheson; Ruth Boatner,

*Plaintiffs—Appellants*,

*versus*

Dallas County, Texas; Fernando Reyes; Trenton Smith; Elvin Hayes; Betty Stevens,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Northern District of Texas
No. 3:17-CV-2021

Before Higginbotham, Smith, and Dennis, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Joseph Hutcheson died after police officers restrained him at the Dallas County Jail. The plaintiffs, Hutcheson's wife and mother, sued the county and four individual officers, bringing an excessive force claim against the officers and failure-to-train and wrongful-death claims against the county. The district court dismissed or granted summary judgment on all claims; plaintiffs appeal on excessive force and failure to train. We affirm.

No. 20-10383

I.

Hutcheson walked into the lobby of the jail under the influence of cocaine and methamphetamine. He staggered through the lobby, approached a group of people sitting on a bench, conversed with them briefly, and took a seat on the bench. When he sat down, the others scattered. Hutcheson rose and spoke with Officer Elvin Hayes. Hayes placed a hand on Hutcheson's arm as if to restrain him, but Hutcheson brushed him away, sat back down, and conversed with Hayes and Deputy Fernando Reyes, who had walked over. Hutcheson stood up again and staggered around the lobby. After he had roamed the lobby for about a minute, Reyes approached Hutcheson, grabbed him, and placed him on the floor.

Other officers joined Reyes in restraining Hutcheson on the floor. They placed him facedown, and Reyes tried to handcuff him while Officers Betty Stevens and Trenton Smith helped restrain him, including by putting their knees on Hutcheson's upper back. Hutcheson resisted, moving his arms to avoid the handcuffs and attempting to roll onto his back several times. He also continued to move his legs, prompting Hayes to step on his ankle. Hayes then grabbed both of Hutcheson's legs and pushed them upward toward Hutcheson's buttocks. Once his legs were released, he stopped moving. The officers placed him in a seated position, and a few minutes later a nurse came to the scene. Minutes after that, paramedics arrived and performed CPR.

Hutcheson was taken to the hospital, where he was declared dead. The medical examiner's report concluded that the manner of death was "homicide" and that he died from a combination of the narcotics in his system and the stress from his struggle with and restraint by the officers.

II.

The plaintiffs sued four officers and the county. They brought three

2

claims: an excessive force action against the officers and a failure-to-train action against the county under 42 U.S.C. § 1983 and a wrongful-death claim under Texas law. *See* Tex. Civ. Prac. & Rem. Code § 71.002.

The defendants initially moved to dismiss; the district court denied that motion after the plaintiffs moved orally to amend their complaint. After the plaintiffs filed their amended complaint, the defendants again moved to dismiss. The district court converted the part of the defendants' motion raising the defense of qualified immunity ("QI") to a motion for summary judgment, then invited the plaintiffs to move for limited discovery. The plaintiffs so moved, and the court denied their motion. The district court granted the defendants' motion to dismiss and granted summary judgment against the plaintiffs' claims.

Plaintiffs appeal the summary judgment regarding excessive force; they also appeal the dismissal of their failure-to-train claim, or, in the alternative, they request the opportunity to replead.

III.

A.

We review a summary judgment *de novo*, considering all evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in the non-movant's favor. *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020), *cert. denied*, 121 S. Ct. 1058 (2021). The burden lies with the movant to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Further, where video evidence "discredits the non-movant's description of facts, we will consider the facts in the light depicted by the videotape." *Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) (internal quotations omitted).

B.

The officers raised the defense of QI, which provides government officials with immunity from suit so long as they do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brothers v. Zoss*, 837 F.3d 513, 517 (5th Cir. 2016) (internal quotations omitted). A government official is entitled to QI unless a plaintiff establishes "that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) (internal quotations omitted).

The plaintiffs contend that the officers violated Hutcheson's constitutional rights by using excessive force. To establish excessive force under the Fourth Amendment, a plaintiff must demonstrate "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (internal quotations omitted). The "second and third elements collapse into a single objective-reasonableness inquiry" determined by the crime's severity, the suspect's threat, and whether the suspect is actively resisting arrest or trying to flee. *Id.*

The plaintiffs contend that the officers used excessive force in violation of clearly established law. They rely on *Darden v. City of Fort Worth*, 880 F.3d 722, 732 (5th Cir. 2018), in which we stated that "a police officer uses excessive force when the officer strikes, punches, or violently slams a suspect who is not resisting arrest." The plaintiffs assert that it is unclear whether Hutcheson was resisting, so there is a genuine issue of material fact whether the officers are entitled to QI.

*Darden* is unavailing. First, the video evidence shows Hutcheson

resisting arrest, both while he moved around the lobby and while officers tried to restrain him on the floor. Indeed, he moved to escape when Hayes tried to grab his arm, and he resisted handcuffing while on the floor. Resisting while being handcuffed constitutes active resistance and justifies the use of at least some force. *See, e.g.*, *Collier v. Montgomery*, 569 F.3d 214, 219 (5th Cir. 2009). Second, the officers used much less force to restrain Hutcheson than the officers used in *Darden*, where the officers "threw [the plaintiff] to the ground and tased him." *Darden*, 880 F.3d at 731. The officers did not strike or tase Hutcheson, nor did they throw him to the ground. Thus, the plaintiffs cannot rely on *Darden* to demonstrate that the officers used excessive force, much less that they violated clearly established law.

The plaintiffs also submit that *Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020), supports their contention that there is a dispute of material fact whether the officers violated Hutcheson's Fourth Amendment rights. The plaintiffs observe that in *Joseph*, as here, there was video evidence of the plaintiff's encounter with police. *Id.* at 325. But the court observed that the video evidence in *Joseph* was of very limited use, stating that "[f]or the most part, Joseph cannot be seen in the video." *Id.* Hutcheson and the police can be seen for the duration of the encounter.

The plaintiffs also point out that the panel in *Joseph* affirmed that "[o]fficers engage in excessive force when they physically strike a suspect who is not resisting arrest." *Id.* at 342. But the officers never struck Hutcheson, who was resisting. Thus, for the same reasons that the plaintiffs' reliance on *Darden* is unavailing, so too is their invocation of *Joseph*.

Because Hutcheson "was not in the midst of harming other individuals and because his resistance was mostly passive, the officers were entitled to use only a proportional amount of force." *Brothers*, 837 F.3d at 519. The video shows the officers using only the force necessary to restrain Hutcheson,

rather than striking or using other force against him. *Cf. id.* Moreover, the fact that they tried to restrain Hutcheson gently before grabbing him and placing him on the floor weighs in favor of the reasonableness of their actions. Indeed, "we have placed weight on the quickness with which law enforcement personnel have escalated from negotiation to force." *Id.* at 520.

It follows that the plaintiffs do not raise a dispute of material fact whether the officers used unreasonable force to restrain a resisting suspect. Therefore, the plaintiffs cannot satisfy the first step of the QI inquiry. The district court properly granted summary judgment as to excessive force.

## IV.

### A.

The plaintiffs appeal the denial of limited discovery. In QI cases, we use a two-step procedure "under which a district court may defer its [QI] ruling if further factual development is necessary to ascertain the availability of that defense." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). First, the court determines whether the pleadings "assert facts which, if true, would overcome the defense of [QI]." *Id.* (internal quotations omitted). Second, if the pleadings assert such facts, the district court issues a narrowly tailored discovery order "to uncover only those facts needed to rule on the immunity claim." *Id.* (internal quotations omitted). We review for abuse of discretion the decision whether to permit limited discovery on QI. *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015).

### B.

The plaintiffs assert that the district court erred in denying limited discovery. They contend that there is some uncertainty surrounding Hutcheson's death, particularly because the video does not include any sound. Thus, plaintiffs aver that limited discovery could provide evidence that might contradict the defendants' account. In the interest of garnering such evi-

dence, the motion for discovery included three interrogatories and two production requests, all with the goal of gaining access to witnesses, including their testimony, that the county might have collected.

Before limited discovery is permitted, a plaintiff seeking to overcome QI must assert facts that, if true, would overcome that defense. *See, e.g.*, *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014). It is not enough broadly to seek information that might impeach the defendants' version of events. Thus, the plaintiffs faltered at the first step of our two-step procedure. *See Backe*, 691 F.3d at 648. Moreover, they failed to identify any questions of fact that the court must resolve before determining QI, thereby failing the second step. *See id.* The district court did not abuse its discretion in denying the motion for limited discovery.

## V.

## A.

The plaintiffs appeal the dismissal of their failure-to-train claim against the county. "We review a district court's dismissal under Rule 12(b)(6) *de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (cleaned up). There is no heightened pleading standard for § 1983 claims against municipalities. *Id.* To survive a motion to dismiss, the complaint need not contain detailed factual allegations but still must state sufficient facts to establish a plausible claim on its face. *Id.*

A complaint is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The alleged facts must be more than speculative. *See Littell*, 894 F.3d at 622. Further, a complaint must do more than recite the elements of a cause of action and must be supported by more than conclusory statements. *See Pena*,

879 F.3d at 618.  In failure-to-train cases, "[d]efects in a particular training program must be specifically alleged." *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017).

## B.

A person may sue a municipality that violates his or her constitutional rights "under color of any statute, ordinance, regulation, custom, or usage." § 1983; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  To establish municipal liability (a "*Monell* claim") under § 1983, "a plaintiff must show the deprivation of a federally protected right caused by action taken pursuant to an official municipal policy." *Valle v. City of Hous.*, 613 F.3d 536, 541 (5th Cir. 2010) (internal quotations omitted).  A plaintiff must identify "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up).  Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

## C.

A failure-to-train action is a type of *Monell* claim.  The "failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Id.* at 849.

To establish a failure-to-train claim, a plaintiff must "prove that (1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional

rights." *Pena*, 879 F.3d at 623 (cleaned up).

To show deliberate indifference, a plaintiff normally must allege a "pattern of similar constitutional violations by untrained employees." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). But where a plaintiff does not allege such a pattern, it is still possible to establish deliberate indifference through the single-incident exception. *Id.* at 624.

The single-incident exception is "extremely narrow." *Valle*, 613 F.3d at 549. The "plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered." *Id.* (cleaned up). For a violation to be "highly predictable," the municipality "must have failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Littell*, 894 F.3d at 624–25 (cleaned up). The single-incident exception "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Pena*, 879 F.3d at 624.

### D.

The plaintiffs contend that the district court erred by dismissing their *Monell* claim against the county before analyzing their excessive-force claim against the officers. The plaintiffs cite no caselaw to suggest that that order of analysis was an error, much less a reversible one. Moreover, because the order of analysis did not change the final disposition of any claim, it in no way prejudiced the plaintiffs' case.

Turning to the merits, the plaintiffs' claim falls short: They fail to establish the first element of a failure-to-train claim, which requires showing that the municipality "failed to train or supervise the officers involved." *Id.* at 623. The complaint is speculative on that point, stating that "[i]f Dallas County failed to train its law enforcement and detention personnel" on the proper procedures to deal with drug-intoxicated individuals, then "it acted

No. 20-10383

with deliberate indifference to Mr. Hutcheson's constitutionally protected rights." The complaint thus doesn't actually make a factual allegation that the county failed to train or supervise—the plaintiffs aver only that *if* it failed to train, then it was deliberately indifferent to Hutcheson's rights.

The complaint also asserts that "[t]he fact that this incident occurred *at all* demonstrates the obvious need for Dallas County to provide its officers with additional or different training." That allegation is conclusory. Moreover, if we adopted the plaintiffs' logic, it would result in the imposition of *respondeat superior* liability on municipalities—and it is "well-established that a city is not liable under § 1983" under that theory. *Peterson*, 588 F.3d at 847. Having failed to state factual allegations that the county failed to train the officers, the plaintiffs cannot establish the first element.

The plaintiffs also fail to establish the third element—deliberate indifference. They concede that they do not allege a pattern of similar constitutional violations, *see Pena*, 879 F.3d at 623; instead, they contend that their claim falls within the single-incident exception. But the plaintiffs cannot avail themselves of that exception because they do not allege that there was "no training whatsoever." *Id.* at 624. Indeed, the complaint stipulates that the Dallas County Sheriff's Department's General Orders provide instruction for officers about how to restrain suspects safely and how to handle interactions with suspects who are mentally ill or under the influence of drugs. The county therefore provided at least some relevant directives or training to its officers. The plaintiffs do not allege that the county provided no training, so they cannot show that the county was deliberately indifferent. The district court properly dismissed the failure-to-train claim.

## VI.

The plaintiffs request that, if we were to find a deficiency in the complaint against Dallas County, we offer them the opportunity to amend to

cure any defects. We review the denial of leave to amend a complaint for abuse of discretion. *United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004). The court "should freely give leave [to amend] when justice so requires." FED R. CIV. P. 15(a)(2). But "leave to amend is by no means automatic." *Ashe v. Corley*, 992 F.2d 540, 542 (5th Cir. 1993) (internal quotations omitted).

The plaintiffs contend that they should be permitted to amend so that they can plead their best case. The district court already provided them an opportunity to amend, however, and the amended complaint is still deficient. Moreover, the plaintiffs do not indicate how they would cure their complaint if given another chance to amend. *See Benfield v. Magee*, 945 F.3d 333, 339–40 (5th Cir. 2019). Thus, the district court did not abuse its discretion in denying leave to file a second amendment.

AFFIRMED.